LAW OFFICES

# LIVINGSTON, ADLER, PULDA, MEIKLEJOHN & KELLY, P.C.

557 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-2922
TELEPHONE: (860) 233-9821 • FAX (860) 232-7818

C-126

DANIEL E. LIVINGSTON
GREGG D. ADLER
RUTH L. PULDA
THOMAS W. MEIKLEJOHN
MARY E. KELLY
PETER GOSELIN
DEBORAH L. McKENNA
HENRY F. MURRAY
BETZABETH SANCHEZ

EXHIBIT D

211A MAIN STREET
NORWICH, CONNECTICUT 06360-2421
(860) 204-0201

PLEASE REPLY TO HARTFORD OFFICE

WRITER'S DIRECT DIAL:
(860) 570-4628

OF COUNSEL
ANNE GOLDSTEIN

March 20, 2002

RECEIVED
STATE OF CONNECTICUT

MAR 22 2002

Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

Robert J. Brothers, Jr., Regional Manager
Commission on Human Rights and Opportunities
West Central Office
55 West Main Street, Suite 210
Waterbury, CT  06702

Re:    **Maria Teresa Alexander v. Pennant Foods, Inc., et al.**

Dear Mr. Brothers:

Enclosed for filing please find a complaint affidavit in the above-referenced matter.  Please enter the firm's appearance on behalf of the complainant, Maria Teresa Alexander, who was working in North Haven, Connecticut at the time the discrimination against her took place.

Sincerely,

BetzaBeth Sanchez
Livingston, Adler, Pulda, Meiklejohn
  & Kelly, P.C.
Juris No. 100758

drc
Enclosures

STATE OF CONNECTICUT
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

**FORM 103**

### AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

DATE:_____ CASE NO:____O2 3094 24 ΤΣ____

My name is <u>Maria Teresa Alexander</u>

and I reside at <u>323 Elm Street, 1st Floor, West Haven, CT 06516</u>

The respondents are: <u>1) Pennant Foods; 2) Bhavin Patel; 3) Joan King</u>

whose addresses are: <u>1) 1000 Universal Drive, North Haven, CT 06473; 2) 975 Mix</u>
<u>Avenue, Hamden, CT 06514; 3) 439 Glenridge Road, Stratford, CT 06497</u>

I was:

| | |
|---|---|
| ( ) terminated | ( ) not hired/not promoted |
| ( ) suspended | ( ) not rented a dwelling |
| ( ) placed on probation | (X) harassed (X) sexually harassed |
| ( ) demoted | (X) earning a different rate of pay |
| ( ) warned | ( ) constructively discharged |
| ( ) given a poor evaluation | (X) retaliated against |
| ( ) denied a raise | ( ) not hired due to a BFOQ |
| ( ) less trained | ( ) not hired due to a disability |
| ( ) denied an office | ( ) delegated difficult assignments |
| ( ) denied service(s) | ( ) other _____ |

(X) discriminated against in terms and conditions of employment
on 9/28/01 and continuing and believe that my

**RECEIVED**
**STATE OF CONNECTICUT**
MAR 2 2 2002
Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

| | |
|---|---|
| (X) race | (X) national origin |
| ( ) color | ( ) marital status |
| (X) sex { } male {X} female | ( ) physical disability |
| (X) previously opposed, | ( ) mental retardation |
|    filed or assisted | ( ) mental disorder |
| ( ) ancestry | ( ) religious creed   ( ) creed |
| ( ) age DOB: | ( ) familial status |
| ( ) religion | ( ) sexual orientation |
| ( ) pregnancy | ( ) learning disability |
| ( ) alienage | ( ) lawful source of income |

was in part a factor in this action. I believe that the respondent violated the following
Connecticut General Statutes and acts listed below and (X) enforced through Section 46a-
58(a) (if applicable)

| | |
|---|---|
| (X) 46a-60(a)(1) | (X) Title VII of the Civil Rights Act |
| (X) 46a-60(a)(4) |    of 1964, as amended, 42 U.S.C. 2000e |
| ( ) 46a-60(a)(7)( )( )( ) |    and the Civil Rights Act of 1991 |
| (X) 46a-60(a)(8)( )( )( ) |    {cite for 15 individuals employed} |
| | |
| ( ) 46a-64c( )( ) | ( ) Age Discrimination in Employment |
| ( ) 46a-64a( )( ) |    Act, of 1967, 29 U.S.C. 621-634 |
| ( ) 46a-81( )( )( ) |    {cite for over 20 individuals |
| ( ) 46a-80 |    employed} |
| ( ) Americans With Disabilities Act, 42 U.S.C. 12101 et seq. | |
| (X) Equal Pay Act of 1964, U.S.C. 206 | |
| ( ) Section 504 of the Rehabilitation Act of 1973, as amended | |

other <u>46a-60(a)(5)</u>

Form 103                                                  Revised 1/1/96

I provide the following particulars:

1.  My name is Maria Teresa Alexander. I am over 18 years of age and understand the meaning of an oath. I reside in New Haven, CT.

2.  The respondent is Pennant Foods, Inc. Pennant Foods, Inc. ("Pennant Foods") is owned by SCIS Food Services, Inc. (d/b/a SC International Services, Inc. and LBI Acquisitions, Inc.), a subsidiary of LSG-Sky Chefs. The respondent has an office and place of business at 1000 Universal Drive, North Haven, Connecticut, 06473. The respondent employs over 15 employees.

3.  The respondent is also Bhavin Patel ("Mr. Patel"), Plant Manager of Pennant Foods, Inc. in North Haven and residing at 975 Mix Avenue, Hamden, Connecticut 06514.

4.  The respondent is also Joan King ("Ms. King"), Human Resources Manager of Pennant Foods, Inc. in North Haven and residing at 439 Glenridge Road, Stratford, Connecticut.

5.  I am Hispanic, specifically Mexican. I am not a citizen. I am female.

6.  On or about October 7, 1991. I was hired by the respondent as a packer in the Packing Department, on the 2nd shift.

7.  Throughout my employment, I always performed my duties in a diligent and competent manner and to the respondent's satisfaction.

8.  At the time of my hire, I worked with Mr. Patel, who was also a packer on the 2nd shift.

9.  In or about September 1992, I accepted a social invitation from Mr. Patel. After a few weeks we began dating and thereafter, we were in a sexual relationship.

10. In 1993, I ended the relationship with Mr. Patel. I told Mr. Patel that I did not want to be in a sexual relationship with him anymore. Mr. Patel then told me that it was "no problem" because he was getting married. Mr. Patel also told me that if he had to get married because of his culture and custom he would do so, but that he loved only me. I again told him I did not want to be a relationship with him anymore.

11. At that time, I changed to the 1st shift.

12. Also in 1993, Ms. King joined Pennant Foods, Inc. as the Human Resources Manager for the respondent. Shortly thereafter, Mr. Patel became the supervisor for the Production Department. On information and belief, Ms. King promoted

1

Mr. Patel.

13. From the time I ended the relationship and continuing throughout my employment, Mr. Patel constantly sexually harassed me. However, in or about 1994, Mr. Patel's constant sexual harassment decreased temporarily. On information and belief, Mr. Patel married at that time. Shortly thereafter, Mr. Patel resumed his constant sexual harassment. For example,

a. Mr. Patel would call me at my home regularly and at all times of the day and night to ask me have sex with him or to go out with him;

b. Mr. Patel would often follow me to my house or call me from the intercom system in my apartment building, which I did not answer when I suspected it was him;

c. Mr. Patel regularly told me that he needed me, that he wanted to have sex with all the time, that he wanted me to be his "second wife," and that had to have me;

d. Mr. Patel would frequently call my sisters' homes - who also worked for the respondent - and demand that they tell him where I was;

e. Mr. Patel would frequently ask my supervisors and co-workers about me and demand that they tell him where I was.

14. In or about 1996, Mr. Patel's constant sexual harassment escalated and he began ordering me to have sex with him. Mr. Patel told me that if I did not have sex with him, he would fire me. Mr. Patel reminded me that he had done many "favors" for me, including cashing my checks for me, permitting me to use his address for my daughter's schooling, making sure I was given my bonus. I was afraid of losing my job or jeopardizing the jobs of my family members. I felt trapped and vulnerable.

15. At that time, Mr. Patel coerced me into sexual intercourse. After this and until 1996, Mr. Patel coerced sexual intercourse with him on several more occasions. Because of Mr. Patel's continuous threats to terminate my job, or the jobs of other family members, I felt I had no other choice.

16. In 1996, Mr. Patel's sexual abuse and harassment decreased temporarily. On information and belief, Mr. Patel had a son at that time.

17. Shortly thereafter, Mr. Patel resumed his harassment and continuous threats to my job, regularly coerced me into sexual intercourse with him and repeatedly sexually abused me. For example,

2

a. Mr. Patel regularly required me to have sexual intercourse with him in the offices at the plant and in his car;

b. Mr. Patel would demand that I have sex with him in my apartment, after I put my daughter to bed;

c. In or about June 1997, Mr. Patel demanded that I have sex with him. At this time, I told him I was very ill. He told me he did not believe me and required me to have sex with him. Shortly thereafter, I suffered a miscarriage for which I was hospitalized, and required one month of disability leave;

18. In 1999, Mr. Patel became the Plant Manager. On information and belief, Ms. King and Dave Schenctman, vice president, promoted Mr. Patel.

19. Throughout my employment, Mr. Patel continuously sexually harassed and abused me, requiring me to have sex with him on a regular basis - and as recently as September 28, 2001, when he did not permit me to work and forced me to have sex with him at his home and in his wife's absence.

20. Throughout my employment, I routinely told Mr. Patel that I did not want to have sex with him, that I did not want to be with him and to stop harassing me, and my family members. On a number of occasions I begged Mr. Patel to stop harassing me. I told Mr. Patel that I felt ashamed and embarrassed, and explained that everyone at the plant knew what he was doing to me, which caused me even greater humiliation. Mr. Patel told me that he did not care, that I needed to remember that he helped me out and that I "had" to be with him.

21. On information and belief, Ms. King was aware of Mr. Patel's conduct.

22. In or about June 2001, Ms. King, Mr. Patel and Gerald Loesche, 1st shift supervisor unexpectedly invited me to participate in the respondent's training program for 1 week in New Jersey. This was the first time in my 10 years working for the respondent that I had been asked to participate in any program. I agreed. However, even while I was away from Mr. Patel in New Jersey, he continued to sexually harass me. Specifically, Mr. Patel called me to tell me that when I returned he had to "see" me.

23. Shortly after a campaign for unionization began, in or about late September or early October 2001, Mr. Patel stopped sexually abusing me, though he continued to sexually harass me.

24. In addition to Mr. Patel's constant sexual harassment and abuse, Ms. King also sexually harassed me throughout my employment. Specifically, Ms. King made inappropriate sexual comments to me. For example:

3

a.    In or about 1996, Ms. King asked - in front of 3 or 4 of my co-workers - how my boyfriend at the time had sex, and whether Americans or Mexicans had bigger penises. I felt extremely embarrassed and humiliated. I asked Ms. King why she was asking me this. Ms King pointed to a co-worker and told me that this co-worker told her that my then boyfriend was "small" and "couldn't get it up;"

b.    Ms. King and co-workers with whom she was closely associated would frequently invite me to have group sex with them at a "party" at Ms. King's house. I always refused;

c.    In or about 1997, Ms. King and co-workers with whom she was closely associated often brought in sexual devices to the plant, which they showed to me and other employees.

25.    Throughout my employment, the only people to whom complaints could be directed were Ms. King and Mr. Patel.

26.    Throughout my employment, Ms. King and Mr. Patel have routinely terminated employees for complaining or reporting the misconduct of any supervisor or manager. I am aware of several such terminations.

27.    Throughout my employment, the respondents treated me differently in the terms and conditions of my employment because of my race and national origin. For example:

a.    Throughout my employment, the respondents discriminated against me and other Hispanic, non-citizen employees in terms of pay, including, but not limited to, failing to pay me, and other Hispanic employees, overtime and paying Hispanic, non-citizen employees a lower hourly rate for similar work. On information and belief, throughout my employment, I did not earn the same hourly rate in the same or similar position, with the same or similar duties as my co-workers who were white citizens though I was as or better qualified;

b.    Throughout my employment, the respondent discriminated against me and other Hispanic, non-citizen employees with respect to time off. For example, on or about March 28, 2001, I was denied time off for the death of my mother. Ms. King, said to my sister "You just came back. If you saw your mother alive, you don't need to see her dead." Ms. King told my niece "You knew your grandmother died this morning and you've been crying all morning. It's afternoon and you still want to cry?" Ms. King then said to us "Get back to work!" On information and belief, white co-workers who were citizens were not denied leave and time off; and

4

c.   Throughout my employment, the respondents subjected me and other Hispanic, non-citizen employees to a hostile work environment due to our national origin and immigration status. I was constantly subjected to derogatory, discriminatory and offensive comments about my race and ethnicity that altered the terms and conditions of my employment. For example, Joan King repeatedly stated that Hispanic immigrants were "pieces of shit."

28.   In addition, throughout my employment, the respondents discriminated against me in the terms and conditions of my employment because of my gender including, but not limited to, paying me less than males doing similar work and giving me fewer raises, promotions and bonuses than similarly situated male employees even though I was as qualified or better qualified.

29.   By the conduct described above, the respondent has discriminated against me on the basis of my sex, created and condoned a hostile work environment and retaliated for opposing discriminatory practices.

30.   By the conduct described above, the respondent discriminated against and created an abusive and hostile work environment for me and other similarly situated female employees.

31.   By the conduct described above, the respondent engaged in a pattern and practice of discrimination against female employees.

32.   By the conduct described above, the respondent discriminated and created an abusive and hostile work environment for me and other similarly situated employees because of our race and national origin.

33.   By the conduct described above, the respondent engaged in a pattern and practice of discrimination on the basis of race and national origin.

34.   By the conduct described above, the respondent has discriminated against me on the basis of race, national origin created and condoned a hostile work environment and retaliated for opposing discriminatory practices.

35.   By the conduct described above, the respondent engaged in a pattern and practice of knowingly and willfully hiring documented and undocumented non-citizens to intimidate, threaten, discriminate against, subjugate and abuse.

36.   As a result of the respondent's conduct I have suffered lost wages, bonuses, benefits and other perquisites of employment, severe pain and suffering and extreme mental and emotional distress.

5

I, Maria Teresa Alexander, request the Connecticut Commission on Human Rights and Opportunities to investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

Maria Teresa Alexander has been provided with a Spanish translation of this affidavit and, Maria Teresa Alexander, being duly sworn, on oath, states that she is the complainant herein; that she has read the foregoing complaint and knows the content thereof; that the same is true of her own knowledge, except as to the matter herein stated on information and belief and that to these matters she believes the same to be true.

Dated at Hartford, Connecticut, this 18th day of March 2002.


_____
Maria Teresa Alexander


Subscribed and sworn to before me this 18th day of March, 2002.


_____
Commissioner of the Superior Court


RECEIVED
STATE OF CONNECTICUT

MAR 2 2 2002

Comm. On Human Rights & Opportunities
WEST CENTRAL REGION


6

SCHEDULE A - GENERAL TREATMENT

CASE NUMBER: 0230424

GENERAL TREATMENT

1.    Did any of Respondent's representatives treat Complainant differently at work because of his/her age national origin, physical disability ?  Was he/she treated differently from younger persons?  If so, how?  In what ways?  And why was he/she treated differently?  Explain.

2. '  Did Complainant complain about different treatment because of age national origin, physical disability?   If so, when did he/she complain?   To whom - by name, race. sex. national origin, and position - did he/she complain?   What was Complainant's complaint exactly and what was Respondent's response to that complaint?   Be specific.

3.    Was Complainant upset by the alleged different treatment?   Was he/she angry?  Did his/her feelings about different treatment affect his/her work performance?  If so, how?  Be specific.  Include dates affected.

4.    Complainant alleges. several incidents of different treatment by Respondent because of age national origin, physical disability,. See the Complaint.  Complainant alleges that his/her race. Age, sex, national origin, was a factor in several of Respondent's decisions/actions affecting him/her.   Please respond to each of Complainant's allegations.  Response should include:

   a.    Whether and when the alleged incidents occurred,

   b.    Reasons for the alleged incidents,

   c.    name, position, sex, race, national origin, of Respondent's decision-makers or actors involved.

F201(5)

Issued 4/24/94
Revised 1/1/96

SCHEDULE A - RETALIATION

CASE NUMBER: 0230424

RETALIATION

1.  On what date(s) did Complainant participate in a civil rights proceeding/investigation?  Explain what he/she did.

2.  When did you find out that Complainant did those things?

3.  Who at Respondent knew that Complainant did those things?  List name and position of each person.

4.  How did those persons find out?

5.  What happened to Complainant as a result of his/her action(s)?  List each thing that happened in chronological order, the person(s) responsible for those incidents, witnesses, and the date(s) of the incidents.  Be specific.

6.  What are Respondent's reasons for those incidents?

7.  Has anyone else at Respondent ever done what complainant did?

8.  What happened to him/her (them)?  List each thing that happened, the person(s) involved, the person(s) responsible, witnesses, and the dates on which those events occurred.

F201(25)

Issued 4/24/94
Revised 1/1/96

SCHUDULE - A - HARASSMENT

CASE NUMBER: 0230424

HARASSMENT

1.  Did anyone at Respondent touch Complainant?  If so, when did that person touch him/her and why?  Where on his/her body did that person touch?  Did he/she reject the touch?  What was his/her reaction to the touch?

2.  Did anyone at Respondent make advances to Complainant?  did that person ask him/her for dates?  Did that person flirt with Complainant?  If yes, on any of the above, explain.  When did any of the above happen?  What was (were) Complainant's response(s)?  Be specific.

3.  Did anyone - management personnel or co-workers - at Respondent tell jokes in Complainant's presence?  If so, what jokes?  Describe them. Be specific.  Did any of those jokes degrade or ridicule female persons?  Explain.  Did Complainant listen to the jokes?  What was his/her reaction to the jokes?

4.  Did Complainant complain about harassment?  If so, when did he/she complain?  To whom (by name, gender, and position) did he/she complain?  What was Complainant's complaint, exactly?  What was Respondent's response to that complaint?  Be specific.

5.  Was Complainant upset by the alleged harassment?  Was he/she angry? Did his/her feelings about harassment affect his/her work performance?  If so, how?  Be specific.  Include dates affected.

6.  Provide affidavits or signed statements by persons alleged in the complainant to have harassed Complainant.  Affidavits or statements should include specific responses to the allegations.

7.  Provide affidavits or signed statements from other Respondent management persons who witnessed the alleged "harassing" conduct. Affidavits or statements should state what exactly the witness saw or did not see.

8.  Has any other Respondent employee or customer complained to Respondent or to an anti-discrimination agency that he/she was "harassed" by a Respondent management person or employee?  If so, who complained?  When?  To whom?  What was (were) the nature of the complaint(s)?  Who was (were) the alleged harasser(s)?  What was (were) Respondent's reaction(s) to the complaint(s)?  Be specific. What is the status of each complaint?

9.  Does Respondent have an "anti-harassment" policy?  Is it written? Is it distributed to all employees?  What is that policy?  When did it take effect?  Does Respondent offer employees or customers an internal complaint "investigation/resolution" process?  If so, describe it.  did Complainant utilize that process?

F201(17)                                                        Issued 4/24/94
                                                                 Revised 1/1/96

ZELDES, NEEDLE & COOPER

A PROFESSIONAL CORPORATION

EXHIBIT E

ATTORNEYS AT LAW
1000 LAFAYETTE BLVD.
POST OFFICE BOX 1740
BRIDGEPORT, CONNECTICUT 06601-1740
TELEPHONE (203) 333-9441
FAX (203) 333-1489

Douglas J. Varga
Direct Dial: (203) 332-5770
E-Mail: dvarga@znclaw.com

June 21, 2002

Pekah Wallace
Regional Manager
Connecticut Commission on Human Rights & Opportunities
55 West Main Street, Suite 210
Waterbury, CT  06702

Re:    Maria Teresa Alexander v. Joan King
       CHRO No. 0230496
       *       *       *       *       *
       Maria Teresa Alexander v. Bhavin Patel
       CHRO No. 0230497

Dear Ms. Wallace:

Please find enclosed the responses of Respondents Joan King and Bhavin Patel to the complaints of discriminatory practice in the above matters.  These responses consist of the following: (1) Respondent Joan King's Answer to Affidavit of Illegal Discriminatory Practice; and (2) Respondent Bhavin Patel's Answer to Affidavit of Illegal Discriminatory Practice.

For their responses to the Commission's Schedule A requests, these Respondents adopt the Schedule A responses (including the response to Employment Schedule A; Schedule A - General Treatment; Schedule A - Harassment; and Schedule A - Retaliation) submitted on May 17, 2002 by Pennant Foods Holdings, Inc. ("Pennant Foods") in the related matter of <u>Maria Teresa Alexander v. Pennant Foods</u>, CHRO No. 0230424.  Copies of those responses are enclosed.

Ms. King and Mr. Patel categorically deny the Complainant's allegations of discriminatory conduct.  The Complainant's fanciful recounting of her many years as Mr. Patel's virtual sex slave[1] is utterly incredible.  The same holds true with respect to the dubious allegations lodged against Ms. King,[2] which purportedly occurred some five years ago.

---

[1] Affidavit of Alleged Discriminatory Practice, ¶¶ 9-23.
[2] Affidavit of Alleged Discriminatory Practice, ¶ 24.

ZELDES, NEEDLE & COOPER                                           June
A PROFESSIONAL CORPORATION

These Respondents further adopt the statements and arguments set forth in Statement dated May 17, 2002 submitted by Pennant Foods in the related matter (L 0230424). As noted in that Position Statement, the claims against all Respondents in u. related matters (as well as those asserted in a host of prior complaints made to this Commis. by this Complainant's family members and co-workers) lack any legitimacy and have been pursued solely for the purpose of promoting union organizing efforts at Pennant Foods' North Haven, Connecticut facility. Indeed, Ms. King and Mr. Patel were warned some time ago that they would be targeted with such claims for that very reason. It is our position that the Complainant's claims have been made with an improper motive and for reasons wholly unrelated to any valid assertion of rights under state or federal law. These claims, therefore, contravene the remedial purpose of the very state and federal laws under which the Complainant seeks relief.

Connecticut's statutory scheme for addressing discriminatory practices also is designed to "guard against subjecting a respondent to a hearing upon every complaint which might be made to the commission, however unfounded." Waterbury v. Commission on Human Rights & Opportunities, 160 Conn. 226, 235 (1971); see Defraine v. Commission on Human Rights and Opportunities, 236 Conn. 250, 261-62 (1996). Connecticut General Statutes §46a-83(b) specifically authorizes this Commission to dismiss a complaint without investigation if the Commission determines (1) that the complaint fails to state a claim for relief; (2) that the complaint is frivolous on its face; or (3) that there is no reasonable possibility that investigating the complaint will result in a finding of reasonable cause. The information and materials submitted by these Respondents and Pennant Foods demonstrate that Complainant's allegations lack any merit whatsoever, and that there is no reasonable possibility that an investigation will result in a finding of reasonable cause against any of the Respondents in these three related matters. Accordingly, on behalf of Ms. King and Mr. Patel, we respectfully request that the Commission dismiss Complainant's complaints after completion of the Merit Assessment Review.

If you have any questions concerning any of the matters addressed above, or if you require any additional information not included with this letter, please feel free to contact me.

I hereby certify that I have sent copies of this letter and of all the enclosed materials via First Class Mail, postage prepaid, on this date to the Complainant's counsel, BetzaBeth Sanchez, Esq., Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 557 Prospect Avenue, Hartford, Connecticut 06105-2922.

Sincerely,

Douglas J. Varga

DJV:dbr
cc:  BetzaBeth Sanchez, Esq.

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

MARIA TERESA ALEXANDER     :

        Complainant,     :

                         :

v.                    :     CHRO No. 0230497

                         :

BHAVIN PATEL            :

                         :

        Respondent.     :     June 21, 2002

**RESPONDENT BHAVIN PATEL'S ANSWER**
**TO AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE**

Pursuant to Conn. Gen. Stat. § 46a-83(a), Respondent Bhavin Patel answers the Affidavit of Illegal Discriminatory Practice in this matter as follows:

Respondent states that his correct name is Bhavin Patel and that he resides at 975 Mix Avenue, Apt. T-6, Hamden, Connecticut 06514.

Respondent denies that he in any way discriminated against Complainant on the basis of race, national origin, ancestry, sex, gender, or in any other fashion, and denies that he violated any federal or state statute or regulation prohibiting discrimination in employment on any basis.

Respondent responds as follows to the numbered paragraphs of Complainant's Affidavit of Illegal Discriminatory Practice dated April 29, 2002:

1.      Respondent states that he does not have sufficient knowledge to admit or deny the truth of the allegations contained in Paragraph 1 of the Affidavit of Illegal Discriminatory Practice.

2.      Respondent denies the allegations contained in Paragraph 2 of the Affidavit of Illegal Discriminatory Practice, except defers to Respondent Pennant Foods Holdings, Inc. ("Pennant" or the "Company") as to its corporate structure and admits that Complainant was employed at the Company's facility located at 1000 Universal Drive in North Haven, Connecticut.

3.      Respondent denies the allegations contained in Paragraph 3 of the Affidavit of Illegal Discriminatory Practice, except to admit that he is the North Haven facility's Manager of Production Planning and Scheduling, and that he resides at 975 Mix Avenue, Apt. T-6, Hamden, Connecticut 06514.

4.      Respondent denies the allegations contained in Paragraph 4 of the Affidavit of Illegal Discriminatory Practice, except to admit that Joan King ("Ms. King") was the North Haven facility's Plant Manager from August 2001 to February 12, 2002.

5.      Based upon information and belief, Respondent admits the allegations contained in Paragraph 5 of the Affidavit of Illegal Discriminatory Practice.

6.      Respondent states that he does not have sufficient knowledge to admit or deny the truth of the allegations contained in Paragraph 6 of the Affidavit of Illegal Discriminatory Practice.

7.      Respondent states that Complainant's personnel records speak for themselves.

8.      Respondent admits that he worked on the same shift as Complainant at some point in time.   Respondent further states that he was a machine operator, not a packer. Respondent states that he does not have sufficient knowledge to admit or deny the truth of the

remaining allegations contained in Paragraph 8 of the Affidavit of Illegal Discriminatory Practice.

9.      Respondent admits that, at some point in 1991, he had a single sexual encounter with Complainant. Respondent denies the remaining allegations contained in Paragraph 9 of the Affidavit of Illegal Discriminatory Practice.

10.     Respondent denies the allegations contained in Paragraph 10 of the Affidavit of Illegal Discriminatory Practice.

11.     Respondent states that he does not have sufficient knowledge to admit or deny the truth of the allegations contained in Paragraph 11 of the Affidavit of Illegal Discriminatory Practice.

12.     Respondent admits that, in September 1994, he became assistant supervisor in the Production Department. Respondent does not have sufficient knowledge to admit or deny the truth of the remaining allegations contained in Paragraph 12 of the Affidavit of Illegal Discriminatory Practice.

13.     Respondent denies the allegations contained in Paragraph 13 of the Affidavit of Illegal Discriminatory Practice

        a.      Respondent denies the allegations contained in Paragraph 13(a) of the Affidavit of Illegal Discriminatory Practice.

        b.      Respondent denies the allegations contained in Paragraph 13(b) of the Affidavit of Illegal Discriminatory Practice.

        c.      Respondent denies the allegations contained in Paragraph 13(c) of the Affidavit of Illegal Discriminatory Practice.

3

   d.  Respondent denies the allegations contained in Paragraph 13(d) of the Affidavit of Illegal Discriminatory Practice.

   e.  Respondent denies the allegations contained in Paragraph 13(e) of the Affidavit of Illegal Discriminatory Practice.

  14.  Respondent denies the allegations contained in Paragraph 14 of the Affidavit of Illegal Discriminatory Practice.

  15.  Respondent denies the allegations contained in Paragraph 15 of the Affidavit of Illegal Discriminatory Practice.

  16.  Respondent denies the allegations contained in Paragraph 16 of the Affidavit of Illegal Discriminatory Practice.

  17.  Respondent denies the allegations contained in Paragraph 17 of the Affidavit of Illegal Discriminatory Practice.

   a.  Respondent denies the allegations contained in Paragraph 17(a) of the Affidavit of Illegal Discriminatory Practice.

   b.  Respondent denies the allegations contained in Paragraph 17(b) of the Affidavit of Illegal Discriminatory Practice.

   c.  Respondent denies the allegations contained in Paragraph 17(c) of the Affidavit of Illegal Discriminatory Practice.

  18.  Respondent denies the allegations contained in Paragraph 18 of the Affidavit of Illegal Discriminatory Practice.

  19.  Respondent denies the allegations contained in Paragraph 19 of the Affidavit of Illegal Discriminatory Practice.

20.    Respondent denies the allegations contained in Paragraph 20 of the Affidavit of Illegal Discriminatory Practice.

21.    Respondent denies the allegations contained in Paragraph 21 of the Affidavit of Illegal Discriminatory Practice.

22.    Respondent denies the allegations contained in Paragraph 22 of the Affidavit of Illegal Discriminatory Practice, except to admit that the Company chose Complainant to participate in a one week-training program in New Jersey.

23.    Respondent denies the allegations contained in Paragraph 23 of the Affidavit of Illegal Discriminatory Practice, except to admit that a campaign to unionize the North Haven facility began in October 2001.

24.    Respondent states that he does not have sufficient knowledge to admit or deny the truth of the allegations contained in Paragraph 24 of the Affidavit of Illegal Discriminatory Practice.

a.    Respondent states that he does not have sufficient knowledge to admit or deny the truth of the allegations contained in Paragraph 24(a) of the Affidavit of Illegal Discriminatory Practice.

b.    Respondent states that he does not have sufficient knowledge to admit or deny the truth of the allegations contained in Paragraph 24(b) of the Affidavit of Illegal Discriminatory Practice.

c.    Respondent states that he does not have sufficient knowledge to admit or deny the truth of the allegations contained in Paragraph 24(c) of the Affidavit of Illegal Discriminatory Practice.

25.     Respondent denies the allegations contained in Paragraph 25 of the Affidavit of Illegal Discriminatory Practice.

26.     Respondent denies the allegations contained in Paragraph 26 of the Affidavit of Illegal Discriminatory Practice.

27.     Paragraph 27 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 27 of the Affidavit of Illegal Discriminatory Practice.

   a.     Respondent denies the allegations contained in Paragraph 27(a) of the Affidavit of Illegal Discriminatory Practice.

   b.     Respondent denies the allegations contained in Paragraph 27(b) of the Affidavit of Illegal Discriminatory Practice.

   c.     Respondent denies the allegations contained in Paragraph 27(c) of the Affidavit of Illegal Discriminatory Practice.

28.     Paragraph 28 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 28 of the Affidavit of Illegal Discriminatory Practice.

29.     Paragraph 29 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 29 of the Affidavit of Illegal Discriminatory Practice.

30.    Paragraph 30 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 30 of the Affidavit of Illegal Discriminatory Practice.

31.    Paragraph 31 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 31 of the Affidavit of Illegal Discriminatory Practice.

32.    Paragraph 32 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 32 of the Affidavit of Illegal Discriminatory Practice.

33.    Paragraph 33 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 33 of the Affidavit of Illegal Discriminatory Practice.

34.    Paragraph 34 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 34 of the Affidavit of Illegal Discriminatory Practice.

35.    Paragraph 35 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 35 of the Affidavit of Illegal Discriminatory Practice.

36.    Paragraph 36 of the Affidavit of Illegal Discriminatory Practice contains legal conclusion to which no response is required.  To the extent that it contains factual allegations, Respondent denies the allegations contained in Paragraph 36 of the Affidavit of Illegal Discriminatory Practice.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Complainant has failed to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

Complainant's claims are barred by the applicable statute of limitations.

### Third Affirmative Defense

Some or all of Complainant's claims are barred because they are outside the jurisdiction of the Connecticut Commission on Human Rights and Opportunities.

### Fourth Affirmative Defense

Complainant's claims are barred to the extent that she fails to set forth a prima facie case of retaliation or employment discrimination on the basis of race, sex, and national origin.

### Fifth Affirmative Defense

Respondent has complied with all laws and regulations and otherwise satisfied any applicable statutory obligations toward Complainant under Conn. Gen. Stat. 46a-60 et al., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e.

### Sixth Affirmative Defense

Complainant has waived or should be estopped from asserting some or all of the claims set forth in the Complaint.

### Seventh Affirmative Defense

If Complainant has suffered damages, such damages were caused by a person or persons for whose conduct Respondent was not and is not legally responsible.

### Eighth Affirmative Defense

To the extent there is any difference in pay between Complainant and any white employee performing equal work, on jobs that require equal skill, effort, and responsibility, and which are performed under similar working conditions, such difference in pay is based on a factor other than race.

### Ninth Affirmative Defense

To the extent that Complainant's claims are based on alleged disparate treatment, Complainant fails to compare herself to a similarly situated employee.

### Tenth Affirmative Defense

Respondent exercised reasonable care to prevent and to correct promptly any sexually harassing behavior, and the Complainant unreasonably failed to take advantage of any preventive or corrective opportunities provided by Respondent or to avoid harm otherwise.

9

### Eleventh Affirmative Defense

Complainant fails to state a claim of harassment because the Company took prompt and effective action to remedy a co-worker's inappropriate behavior once it was on notice of such behavior.

### Twelfth Affirmative Defense

Complainant fails to state a claim for retaliation because Respondent had no knowledge of Complainant's protected activity.

### Reservation of Rights

Respondent reserves his rights to amend his answers and to assert any additional affirmative defenses as may become available or apparent during the course of the investigation and/or discovery in this case.

Respectfully submitted,

BHAVIN PATEL

By: _____
Douglas J. Varga

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
P.O. Box 1740
Bridgeport, CT  06601-1740
(203) 333-9441

His Attorneys

10

## OATH

I, Bhavin Patel, the Respondent in this action, have read the foregoing Answer to

Affidavit of Illegal Discriminatory Practice, and I declare under oath that it is true and correct to

the best of my knowledge and belief.

Date: 6/20/02                                    _____
                                                 Bhavin Patel

Subscribed and sworn to before me on this
2673 day of June, 2002.

_____
Notary Public/
Commissioner of the Superior Court

11

## CERTIFICATE OF SERVICE

I, Douglas J. Varga, hereby certify that on June 20, 2002, a true copy of the foregoing document was delivered by First Class mail, postage prepaid, upon the Complainant's Attorney named below:

BetzaBeth Sanchez
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Ave.
Hartford, CT 06105-2922

_____
Douglas Varga

12