UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVA MCINTIRE,
MARIA ELENA PEÑA MOTA,
MARIA TERESA ALEXANDER,

        Plaintiffs

v.

PENNANT FOODS, INC.,
d/b/a Chef Solutions, Inc., a wholly
owned subsidiary of Lufthansa,

        Defendant.

CIVIL ACTION NO.
303CV0126(GLG)

March 11, 2004

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL AND REQUEST FOR SANCTIONS

I. **Introduction**

This case involves Defendant Pennant Foods, Inc.'s (hereinafter "the Defendant") egregious sexual harassment of employees Eva McIntire, Maria Elena Pena Mota and Maria Teresa Alexander (hereinafter "the Plaintiffs"). The Plaintiffs contend that throughout their employment they were subjected to unwelcome touching, unwelcome sexual comments, and threats that they - or their relatives - would lose their employment unless they submitted to the sexual advances of their supervisors. The Plaintiffs claim that the Defendant is liable for this harassment because it permitted the creation of an environment hostile to women, and because the Defendant knew or should have known of this hostile environment and failed to take appropriate action to protect the Plaintiffs from sexual harassment.[1]

---

[1] In the alternative, the Plaintiffs contend that the Defendant is liable for the harassment because it involved, in relevant part, quid pro quo harassment by the Plaintiffs' supervisors.

The Defendant denies that the Plaintiffs were victims of sexual harassment, claiming that any sexual conduct was consensual. In addition, the Defendant has raised affirmative defenses, claiming that the corporation cannot be held liable because: (1) it exercised reasonable care to prevent and to correct promptly any sexually harassing behavior and (2) it took prompt and effective action to remedy any inappropriate behavior once it was on notice of such behavior.

As is explained below, the Defendant has failed to disclose the details surrounding its allegedly prompt and effective response to employee sexual harassment complaints. The Defendant has claimed that its investigatory communications, including the questions witnesses were asked, are privileged because counsel either conducted or were involved in the investigations. The Defendant has claimed that the investigatory documents, including the notes of witness interviews, are similarly privileged. When the Plaintiffs tried to discover the facts with respect to the investigations, by utilizing a F.R.C.P. 30(b)(6) deposition, the Defendant failed to provide a properly prepared and educated witness, instead claiming that the details of the investigations, while known to the Defendant's counsel, were somehow not "available" to the corporation.

The Plaintiffs have been unable to resolve these issues despite numerous attempts. The Plaintiffs, therefore, move to compel production of this relevant information, and seek sanctions for the Defendant's failure to provide the information when it was initially requested[2].

---

[2] The Plaintiffs also seek sanctions against Defendant's counsel for repeatedly violating F.R.C.P. 30(d)(1) during depositions taken by the Plaintiffs.

2

## II.   **The Relevant Facts**

As was stated above, the Plaintiffs claim that the Defendant is liable for the sexual harassment that they have suffered at the hands of their co-workers and supervisors. Plaintiff Eva McIntire contends that she complained to her supervisors about sexual harassment, but that the Defendant failed to investigate or to take any action to protect her. (See Amended Complaint at ¶ ¶ 76-77. 82-83) On November 27, 2001, Plaintiff McIntire filed a complaint of discrimination with the CHRO and EEOC alleging, *inter alia*, that she had been sexually harassed by supervisors Henry Cooper, Mike Cote, Maribel Carrasquillo, Joan King and Bhavin Patel. (Id.) Attorneys Lynn Kappelman and Damien Wilmot investigated Plaintiff McIntire's claims of sexual harassment, acting on behalf of the Defendant. (Affidavit of Mary E. Kelly attached hereto as Exhibit A)

On January 21, 2002, Plaintiff Pena Mota complained to Joan King that she was being sexually harassed by her supervisor, Guillermo Palma. (See Amended Complaint at ¶¶ 59-61) Plant Manager Joan King allegedly began investigating this internal complaint. On January 30, 2002, Plaintiff Pena Mota also filed a complaint with the CHRO and EEOC alleging that she had been sexually harassed by Palma. (See Amended Complaint at ¶13) On information and belief, attorneys Lynn Kappelman and Damien Wilmot investigated these claims, acting on behalf of the Defendant. (Ex. A)[3]

Shortly after Counsel's investigations were conducted, Guillermo Palma and

---

[3] The Defendant has recently explained that Counsel was involved in Ms. King's investigation, but did not investigate. (Ex. A) After the CHRO charge was filed, Counsel apparently conducted a separate investigation. (Ex. A)

3

Maribel Carrasquillo were terminated. The reason for Ms. Carrasquillo's termination is unknown to the Plaintiffs. The Defendant has stated that Mr. Palma was being terminated for, "failing to disclose a consensual sexual relationship with a subordinate". ( See Defendant's Supplemental Responses to Plaintiff's First Set of Interrogatories dated November, 20 2003, Supplemental Response to Interrogatory No. 8; attached hereto as Exhibit B). On or about the same date, Ms. King was terminated by the Defendant.[4]

On March 22, 2002, Plaintiff Alexander filed a complaint with the CHRO and EEOC alleging, *inter alia*, that she had been sexually harassed and discriminated against by Bhavin Patel. (See Amended Complaint at ¶ 14) Attorneys Lynn Kappelman and Damien Wilmot investigated Plaintiff Alexander's claims of sexual harassment, acting on behalf of the Defendant. (Ex. A) In August 2001, apparently as a result of this investigation, Bhavin Patel was terminated.[5]

When the Plaintiffs brought the instant action, the Defendant raised the affirmative defenses that, "Defendant exercised reasonable care to prevent and to correct promptly any sexually harassing behavior", and that, "Defendant [sic] fails to state a claim of harassment because Defendant took prompt and effective action to remedy an employee's inappropriate behavior once it was on notice of such behavior".

---

[4] The Defendant reports that she was terminated as a result of a reorganization of management. (Defendant's Supplemental Responses to Plaintiff's Interrogatories numbered 6 and See, at Supplemental Response to Interrogatories No. 6 attached hereto as Exhibit C).

[5] The Defendant states that Mr. Patel was terminated, at least in part for allegedly, "failing to disclose a consensual sexual relationship with a subordinate". (See Ex. C, Supplemental Response to Interrogatory No. 7)

4

(See Defendant's Answer, Eighth Affirmative Defense; Ninth Affirmative Defense) The discovery disputes at issue in this motion involve Plaintiffs' attempts to discover the detailed facts concerning these affirmative defenses.

In May 2003, the Plaintiffs served interrogatories and requests for production of documents on the Defendants. (Plaintiff Eva McIntire's First Set of Interrogatories and Requests for Production of Documents attached hereto as Exhibit D) Certain of these interrogatories and requests for the production of documents sought information as to the factual basis for the Defendant's affirmative defenses.

For example, in Interrogatory Number Four, the Plaintiffs asked the Defendant to:

> identify and describe in detail the policy, practice or procedure used by the Defendant to investigate complaints of retaliation, sexual harassment and/or sex discrimination, including the individuals involved in the investigative process, the training if any, received by each such individual, and please identify all documents that relate to the answer.

(See Ex. D, Interrogatory Number 4)

The Defendant objected and responded to this Interrogatory claiming,

> Defendant objects to this Interrogatory on the grounds that it is vague and ambiguous. Defendant also objects on the grounds that it is unduly burdensome as drafted. Notwithstanding these objections, Defendant refers Plaintiff to the Pennant Employee Handbook, which contains policies covering sexual harassment, equal employment opportunities, the work environment, employee counseling and disciplinary guidelines, which speak for themselves.

(See Defendant's Objections to Eva McIntire's First set of Interrogatories attached hereto as Exhibit E)[6]

---

[6] The Defendant also objected to all of the Plaintiffs discovery to the extent that it sought information protected by the attorney client or work product privileges.

After a discovery conference, the Court ordered the Defendant to identify the persons responsible for investigating complaints for the Defendant from 1997 to the present and to describe any investigatory practices. (Ex. A) The Defendant filed a supplemental response pursuant to the Court's order on or about November 20, 2003. (See Ex. B)[7] In this response, the Defendant stated that investigations were conducted by supervisors, managers or department heads and/or by Joan King, David Schenkman, Diana Figueroa, and Richard Price. (See Ex B, Supplemental Response No. 4).

The Defendant did **not** state that legal counsel had conducted investigations into the sexual harassment complaints of the Plaintiffs and of employee Seema Srivistara[8], and did not identify any documents concerning the investigations conducted by legal counsel on the Defendant's behalf. (Id) Counsel certified these responses, thereby affirming the legitimacy of the response, even though Counsel was clearly aware that the response was incomplete and potentially misleading.

With respect to Interrogatory 13, the Plaintiffs asked the Defendant to,

---

However, despite repeated requests, the Defendant has refused to provide the Plaintiff with a log indicating: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; and (5) each recipient of the document. (Ex. A)

[7]Exhibit B purports to describe the discovery order of the Court. The Plaintiffs do not agree that the Defendant has accurately done so. In particular, the Plaintiffs contend that the Court ordered the Defendant to identify the persons responsible for investigating complaints on the Defendant's behalf, and did not limit the response to "employees". (See Ex. A)

[8] This individual is sometimes identified by witnesses as Seema Srivistara and sometimes as Seema Srivistava. In the interest of consistency, she will be referred to as Ms. Srivistara throughout this memorandum.

6

> identify each and every employee who has complained of sexual harassment, retaliation, sexual misbehavior or sex discrimination from 1995 to the present, and describe each such complaint and the Defendant's response if any. Please identify all documents which relate to each such complaint or to this answer.

(Ex. D, Interrogatory Number 13)

The Defendant objected to this Interrogatory claiming,

> Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, Defendant states that, other than the Plaintiffs, Seem Srivistara filed a complaint....

(Ex. E)

During a discovery conference with the Court, the Defendant indicated that it had produced all non-privileged documents concerning the complaints or investigations. (Ex. A) After the conference, the Defendant was ordered to state that there had been no other complaints, formal or otherwise, and to identify any documents concerning the complaints. (Ex. A) The Defendant provided a supplemental response on or about November 20, 2003. (See Ex. B) The Defendant confirmed that only the Plaintiffs and Ms. Srivistara, had made such complaints, and stated that the Defendant had no documents concerning Ms. Srivistara's complaints. (Ex. B Supplemental Response No, 13) The Defendant did not produce any documents concerning the investigations by legal counsel into the complaints of the Plaintiffs or provide a privilege log with respect to the documents which had been withheld based on claims of privilege. (Ex. A)

With respect to the production requests, the Plaintiffs asked the Defendant to produce,

7

> all documents regarding any and all complaints or investigations
> of sexual harassment, retaliation, and/or sex discrimination by Defendant
> from 1995 through to the present, including any documents relating to
> the investigation or settlement of such complaints and any summaries or
> evaluations of such complaints.

(Ex. D, Production Request 3)

The Defendant objected to this request claiming that,

> it is overly broad, unduly burdensome, and not calculated to lead
> to the discovery of admissible evidence. Defendant also objects on
> the grounds that this request calls for information that may violate the
> privacy rights of current or former Pennant employees. Finally Pennant
> objects on the grounds that the request calls for information protected
> by the attorney-client and work product privileges.

( Defendant's Objections to Eva McIntire's First Set of Requests for Production of Documents attached hereto as Exhibit. F) Again, the Defendant failed to produce a privilege log identifying any documents within the Defendant's custody and control that had been withheld based on claims of privilege. (Id)

The Plaintiffs took the deposition of Joan King. (Deposition of Joan King attached hereto as Exhibit G)[9] Ms. King testified it was previous legal counsel that had conducted the investigation into the complaints of Seema Srivistara. (Ex. G. at 129-130) She also explained that current Counsel had been involved in the Defendant's investigation and response to Plaintiff Pena Mota's complaints. (Ex. G. at 198-100) In fact, when Ms. King was asked who had made certain decisions with respect to the results of the investigation, Counsel objected insofar as the information was privileged. (Ex. G at 198-200) Ms. King indicated that she was unable to identify the decision

---

[9] Because the Court may wish to review other portions of the depositions to ascertain the general tone and demeanor of Counsel, the deposition transcripts are produced in their entirety on disc.

maker without disclosing privileged communications. (Id.)

The Plaintiffs next took the deposition of alleged harasser (and former production manager) Bhavin Patel. (Deposition of Bhavin Patel attached hereto as Exhibit H) Mr. Patel was allegedly a witness with respect to Ms. King's investigation into Plaintiff Pena Mota's sexual harassment complaint. Mr. Patel also testified that he had been interviewed on two occasions by Defendant's Counsel in connection with Defendant's investigations into the Plaintiffs' claims. (Ex. H at 111-113).

The Plaintiffs were permitted to ask Mr. Patel what he recalled about the investigation allegedly conducted by Ms. King. (Ex. H at 72-77) However, the Defendant would not permit Mr. Patel to answer questions concerning the investigations into the sexual harassment complaints of the Plaintiffs conducted by Counsel.[10] Defendant's Counsel claimed that since those investigations all took place after the CHRO claims were filed, and were conducted by Counsel, the investigations were protected by the attorney client or joint defense privileges. (Ex. H at 93-101) Counsel claimed that the Defendant was entitled to rely on these investigations as part of its affirmative defense, but that the Plaintiffs were not entitled to know the substance of the investigations. (Ex. H at 102-103)

---

[10]Counsel directed the witness not to answer numerous questions about what Mr. Patel was asked and/or what he said during the Defendant's investigations, claiming that the information was protected by the attorney client privilege. (Ex. H at 141-145; 163-171, 175-197) Ultimately, Defendant's counsel let Patel testify about certain aspects of what he was asked by Counsel with respect to specific allegations about him. However, Defendant's Counsel instructed the witness not to answer and/or limited the answers to numerous questions, including any questions related to the Plaintiffs' allegations about Joan King, Maribel Carrasquillo or Guillermo Palma. (Ex. H at 141-145; 155-158; 160-161; 163-172; 174-183).

9

The Plaintiffs next noticed the corporation's deposition pursuant to F.R.C.P. 30(b)(6). (F.R.C.P. 30(b)(6) Deposition attached as Exhibit J; Deposition Notice attached as Exhibit I)[11] The Defendant designated Brian Glancy as its corporate representative with respect to all of the areas of inquiry identified in the deposition notice. (Ex. K) However, at the start of the deposition, Defendant's Counsel indicated that Mr. Glancy might not be able to provide all of the information known or reasonably available to the Defendant. (Ex. J at 5-24) Defendant's Counsel suggested that the Plaintiffs should see what Mr. Glancy knew, explaining that if he did not have the required information, the Defendant would produce another designee at a later date. Specifically, Defendant's counsel stated,

> "[i]f there are issues that he can't testify to, I assume we will figure those out and find someone else with knowledge....".

(Ex. J at 5). Defendant's counsel further explained,

> " He has some of the information. If there's information that he does not have, we will designate another witness....

Id. at 11. Finally, Defendant's Counsel argued,

> Mary, I don't know whether he's going to answer these questions to your satisfaction. I can't get into your head, thank God. Okay? So he's here today to answer as much as he can answer, and like most cases with 30(b)(6) depositions, if you find that he does not answer it to your satisfaction— we will find out what information has not been responded to and we will designate.... "

Id. at 15-16.

---

[11] The Plaintiffs also sought the production of all documents within the Defendant's custody and control concerning the training, investigations, and affirmative defenses, pursuant to F.R.C.P.30(b)(5). The Defendant did not object to these document requests or produce a privilege log. (Ex. J) However, the Defendant failed to produce investigatory documents within the Defendant's custody or control.

10

During the course of the deposition, it became abundantly clear that Mr. Glancy did **not** have all of the information reasonably available to the Defendant with respect to a number of the areas of inquiry, including the information available to the Defendant with respect to the affirmative defenses. Moreover, it was apparent that the Defendant had made no effort to provide available information to Mr. Glancy, and that Mr. Glancy had similarly made no effort to educate himself. (See Ex J. 93-99; 157-159; 166-177; 183-186).

Mr. Glancy testified that in claiming that the Defendant took prompt and effective action, the Defendant was relying, *inter alia,* on the Defendant's investigations and responses to the sexual harassment complaints of the Plaintiffs and of Seema Srivistara. (Ex. J at 84-89) However, he did not have all of the information reasonably available to the Defendant with respect to any of these investigations.[12]

With respect to the investigation of Ms. Srivistara, Mr. Glancy did not know the identity of the investigator, whether the investigation was documented, what witnesses were spoken to during the investigation, whether anyone ever spoke to Ms. Srivistara as part of the investigation, whether the investigation was kept confidential, whether anyone was disciplined as a result of the investigation, or whether the Defendant ever investigated the allegations concerning pornography in the plant. (Ex J. at 89-104). Mr. Glancy did not even know what conclusions the Defendant reached as a result of the investigation. (Ex. J at 89-104; 107) Mr. Glancy conceded that there might be information about how the complaint was investigated available through legal counsel

---

[12] These areas of inquiry are set out in items 2,4,5,14, 15, and 16 of the deposition notice. (See Exhibit I)

11

that the Defendant had failed to provide to him.[13] (Ex. J at 93-95;99 110)

Mr. Glancy was also ignorant of the details of Joan King's investigation of Plaintiff Pena Mota's initial complaints, despite the fact that the Defendant had at one point designated Ms. King as Defendant's trial consultant. Mr. Glancy's testimony included the following:

Q. Is there any other evidence that the defendant is aware of, other than Mr. Palma's claims that would tend to show that the relationship was consensual?
A. I know there was another witness that Joan had interviewed that concluded that it was consensual.

Q. Who was that witness?
A. I forget the person's name.

Q. What did the witness say?
A. Basically that it was consensual.

Q. Okay. What did the witness say— what facts did the witness give that would cause the defendant to believe that the relationship was consensual?
A. I don't recall at this time....

Q. Did Ms. King document her investigation?
A. I don't know.

---

[13]Counsel instructed the witness not to answer certain questions about the investigation into Seema Srivistara's complaints, claiming that the information was privileged. (Ex. J at 90-93) Defendant's Counsel explained that in raising the affirmative defense, the Defendant intended to rely on the fact that it had investigated the claims of Ms. Srivistara, but would not permit inquiry with respect to the investigation. Counsel stated,

> I'm gong to say I can't be any more clear. The fact that we investigated Seema's claims and not the substance of the investigation is what I'm introducing. And I'm claiming that to the extent that Gary Starr was Involved in that investigation, Gary Starr being a lawyer at Shipman & Goodwin, it's privileged, and we're not waiving the privilege. Period. If you want to move to compel, knock yourself out. I'm done discussing it.

(Ex. J at 92-93)

12

(Ex. J at 66-67)

Mr. Glancy was similarly unaware of the details of the investigations which were conducted for the Defendant by Attorney Kappelman and Attorney Wilmot. (Ex. J at 128-129, 137-138, 155) With respect to their investigations into the complaints of Plaintiffs McIntire and Alexander, Mr. Glancy had not been informed of the specifics of what alleged harasser Bhavin Patel was asked during the investigation. (Ex. J at 185-187) He was not told the order of other witnesses or what these other witnesses allegedly said. (Ex. J at 167-168) Although he knew that credibility findings were made, he did not know what factors were considered in making these determinations. (Ex. J at 178-181) He did not know if the investigations had been documented in any way by counsel or by anyone else. (Ex. J at 166-167)

With respect to Counsel's investigation into Ms. Pena Mota's complaints, Mr. Glancy did not know when the investigation took place, who spoke to the employees and witnesses, the poor performance that allegedly led to Mr. Palma's termination, whether all of the investigators concurred, what happened to the notes of the investigation, or whether the investigation had been documented. (Ex. J at 110-116; 157) While he claimed that statements of employee Pilar Molina were considered by the Defendant in reaching the conclusion that there was no harassment, he did not know what Ms. Molina said during the investigation. (Ex. J at 133-134)

It is clear that the Defendant, through counsel, had detailed information about the investigation which was not provided to Mr. Glancy. (Ex. J. 129-130; 155-156, 168-172) Instead of providing the designee with all of the available information, Mr. Glancy was apparently provided with only a vague understanding of the investigations, and

13

some of the conclusions reached as a result of the various investigations. Indeed, Defendant's counsel admitted as much, explaining,

> The company's counsel who conducted the investigation knows what [the witness] said, but the fact that company's counsel didn't report back that level of detail... because the company's counsel conducts an investigation, reports back its conclusions to the company. The company doesn't say tell me exactly what each witness said. The company relies on its investigators to give it a conclusion. That's how sexual harassment investigations occur.... The company hires an investigator and says do an investigation and report back on your investigation, give us a conclusion and give us remedial measures. So, the company's counsel does an investigation, reports back and says here's our conclusion, and the company says okay this is what I know.....

(Ex. J at 168-169)

Mr. Glancy was inadequately prepared to testify about other areas as well. The Defendant had been asked to produce someone who could answer questions about,

> "[t]he sexual harassment training and counseling allegedly provided to employees, including the identification of who provided this, how employees were notified of it, and the training provided to those persons who conducted it."

(See Exhibit I) However, Mr. Glancy was unable to identify the attorney who provided the training, did not know if documents concerning the training existed, and did not know the details of the training. (Ex. J at 39-45). His testimony included the following:

Q. What did [the training] say about harassment?
A. I don't know, specifically.....

Q. You said it covered how to conduct an investigation. What did it cover with respect to how to conduct an investigation?
A. I don't know the details....

Q. Do you know if the training at that time involved any training on documenting investigations.
A. I don't know....

Q. Okay, were employees trained about what level of discipline was appropriate?

14

A.   I don't know that....

Q.   Were any documents provided as part of this training?
A.   I don't know. I have not seen any....

Q.   How long did the training last?
A.   I don't know....

(Ex. J at 43-55)

Finally, the corporation had been asked to provide someone who had all available information as to,

> "[e]ach and every person who the Defendant believes has information concerning the Defendant's alleged practice of handing out handbooks to each employee".

(Ex. I)

However, Mr. Glancy had no idea who had provided the hand books to the Plaintiffs or if anyone had personal knowledge of the Defendant's practices. (See Ex. J at 72-76). His testimony included the following:

Q.   Does the defendant know of anyone other than the plaintiff's who would have personal knowledge... with respect to whether or not the Plaintiff Mcintire ever actually received an employment handbook?...
A.   I'm sure Dave Shenkmen, the plant people....

Q    So they would have personally observed the plaintiff receiving the handbook?
A.   They may have. I don't know that.......

Q    Is the defendant aware of any person who could testify that they saw Plaintiff McIntire receive a handbook?
A.   It could have been local managers at that time.

(Ex. J at 72-76)

Sometimes, of course, information is simply unavailable to the corporation. Under such circumstances, the lack of knowledge of a F.R.C.P. 30(b)(6) witness is unavoidable. However, it does not appear that the Defendant made any effort to

15

determine if information was available through current legal counsel, previous legal counsel, or previous employees. (See: Ex. J at 115-125). With respect to the issue of the employee manual, Defendant's counsel admitted that no efforts were made to see what information was available, explaining,

> "[a]t the present time we haven't asked anyone if they ever saw them sign it. ... We haven't asked these folks who were managers at the time if they saw it".

(Ex. J at 75-76.)

During the three depositions, Defendant's counsel also made speaking objections, coached the witness, answered questions directed to the witness, and repeatedly engaged in unnecessarily antagonistic and disruptive behavior. (See Exhibit G at 29, 72-74, 77, 78, 82, 85, 87-90, 101, 103-104, 124-125, 167, 195, 197; Ex. H at 36-38; 40-41; 95-99; 145- 154; 178-179; Ex. J at 7-8; 28-29, 35-37; 56-61; 66, 79-82, 86, 101, 107-108, 113-115; 136-144, 146-151; 156; 162, 165). When asked to stop making speaking objections, Defendant's Counsel refused. (EX. J. at 138-144, 161-162) When Plaintiff's counsel requested that the witness leave while the Defendant's counsel made a speaking objection, Defendant's counsel directed the witness not to leave. (Ex J at 162)

### III.  **The Legal Standard**

The general scope of discovery is defined by Federal Rule of Civil Procedure 26(b), which states in pertinent part,

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any . . . documents,

16