In a transparent attempt to avoid the impact of these cases, the Defendant now argues that it is not relying on the investigations themselves— only on the findings reached and actions taken as a result of these investigations. However, as was explained above, it is impossible to determine the reasonableness of the findings reached by the Defendant or the actions taken, without full knowledge of the investigation. As was explained in McGrath, 204 F.R.D. at 245, the sufficiency of the Defendant's response must be evaluated in light of what the Defendant learned in its investigation, and any, "attempt to parse its investigation from the whole of its remedial measures is artificial". Indeed,

> [w]here, as here, the employer defends itself by relying on the reasonableness of its response to the victims allegations, the adequacy of the employer's investigations becomes critical to the issue of liability.

Brownell, 185 F.R.D. at 25; Worthington, 177 F.R.D. at 118 (noting that the investigation and report of counsel were discoverable so long as defendant relied on affirmative defense of effective remedial action, and claimed that conduct complained of was not unwelcome). See Also: Matsushita Electronics Corp. v. Loral Corp., 1995 WL 527640, at * 2 (S.D.N.Y.1995) (waiver found where party raised defense of reasonable reliance on counsel, because "that determination may turn on, among other things, what information was known to the attorney when formulating his or her opinion").

> By asking [counsel] to serve multiple duties, the defendants have fused the roles of internal investigator and legal advisor. Consequently, [the defendant] cannot now argue that its process is shielded from discovery. Consistent with the doctrine of fairness, plaintiffs must be permitted to probe the substance of [the defendant's] alleged investigation to determine its sufficiency. Without having evidence of the

26

> actual content of the investigation, neither the plaintiffs, nor the factfinder at trial can discern its adequacy...
>
> Justice requires that the plaintiffs be permitted to respond to the defenses asserted with a full spectrum of information. [The defendant] may not withhold essential information with regard to its internal investigation. That [the defendant] chose to enlist its attorney to act with dual purpose does not provide sufficient basis to overcome the unfairness of limiting the information it provides.....

Harding, 914 F.Supp. at 1093-1099.

By choosing to raise the Farragher-Ellerth affirmative defenses in this case, the Defendant has waived any claims of attorney client or work product privilege with respect to the nature, scope and substance of the Defendant's investigations into the sexual harassment complaints of the Plaintiffs and of Seema Srivistara, the recommendations made as a result of these investigations, and any actions taken as a result of these investigations. The Plaintiffs, therefore, respectfully request that the Court order the Defendant to produce any documents relating to the investigations, recommendation and actions taken that were withheld on the basis of privilege,[17] pay the costs for the re-deposition of Bhavin Patel so that answers to all questions Patel was instructed not to answer may be provided, and pay the reasonable costs and attorneys fees for the production of this motion.

### C. The Defendant Improperly Failed to Provide a F.R.C.P. 30(b)(6) Witness with Complete, Knowledgeable and Binding Information

The Defendant has also failed to comply with the unambiguous requirements of F.R.C.P. 30(b)(6). Specifically, the Defendant failed to properly prepare a designee to

---

[17] Of course, the portions of documents concerning trial strategy or the legal advice of counsel may be redacted.

27

testify, " as to all matters known or **reasonably available** to the organization."

F.R.C.P. 30(b)(6) (emphasis added).

As one recent case has pointed out,

> [a] deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity... The Rule 30(b)(6) designee does not give his personal opinions. Rather, he presents the corporation's "position" on the topic... The corporation must provide its interpretation of documents and events..... The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition.

Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc. , 2002 WL 1835439 at *2-*3, (S.D.N.Y.2002),  See Also:  Sabre v. First Dominion Capital, LLC, 2001 WL 1590544 at *1 (S.D.N.Y.2001).

Because a F.R.C.P. 30(b)(6) witness is to speak on behalf of the corporation, it is not enough for a corporation to merely provide an officer, and permit the opposing party to explore that officer's personal knowledge of the issues.  Rather,  the corporation must make a conscientious, good-faith effort to designate someone familiar with the subject matter and/or to prepare such person or persons,

> "in order that they can answer fully, completely [and] unevasively, the questions posed as to the relevant subject matters.

Sony Electronics, Inc. v. Soundview Technologies, Inc, 217 F.R.D. 104 (D. Conn. 2002); Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 504 (D.Md. 2000) ("Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area and produce that

designee as noticed."); <u>Bank of New York v. Meridien BIAO Bank Tanzania Ltd</u>., 171 F.R.D. 135, 151 (S.D.N.Y.1997) (deponent must be prepared "to the extent matters are reasonably available, whether from documents, past employees, or other sources.").

Furthermore, the party has an affirmative duty to make available, "such number of persons as will be able to give complete, knowledgeable, and binding answers on it's behalf". <u>Reilly v. Natwest Markets Group, Inc.</u>, 181 F.3d. 253, 261 (2nd Cir. 1999); <u>Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co. Inc.</u>, 201 F.R.D. 33, 36 (D.Mass.2001). A party's failure to produce a fully prepared representative or representatives on the scheduled date of deposition, is, "for all practical purposes, no appearance at all", and may subject the party to sanctions. <u>Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.</u>, 228 F.3d 275, 303 (3rd Cir. 2000). Consequently, a party is not permitted to,

> "wait and see" what areas the designee might be able to cover as defendants did here. Such an approach results in delay and expense.

<u>Hayes v. Mazda Motor Corp.</u>, 2000 WL 33208121 at *4 (D. Md. 2002).

In the present case, the Defendant clearly did not make a conscientious effort to provide such number of persons as could provide complete, knowledgeable, and binding answers on it's behalf. In fact, Counsel began the deposition by admitting that the Defendant did not know whether the witness could provide complete responses. The Defendant sought to have the Plaintiffs determine the areas which the witness was unable to cover, suggesting that once the Plaintiffs did so, the Defendant would, "find someone else with knowledge". As was explained in <u>Hayes</u>, 2000 WL 33208121 at *4, this type of "wait and see" behavior is unacceptable.

Moreover, it was abundantly clear that the Defendant did not properly educate and prepare the witness with respect to the information available to the Defendant. Mr. Glancy did not have information available to the Defendant through it's trial consultants, and the Defendant had not attempted to speak to former employees, or even to its current employees in order to prepare Mr. Glancy to fully disclose the information available to the Defendant. This alone would be sufficient to subject the defendant to sanctions. See United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (a corporation is required to prepare "its Rule 30(b)(6) designee to the extent the matters are reasonably available, whether from documents, past employees, or other sources").

However, the facts in the present case are far more egregious. In this case, present legal counsel was either involved in, or conducted the investigations of the Plaintiffs' complaints, while previous legal counsel conducted the investigation into Ms. Srivistara's complaints. Thus, detailed information about the investigations was available the Defendant. Mr. Glancy, however, was not educated so that he could provide this information.

The Defendant apparently contends that this information is either privileged or not "available". This is nonsense. Facts are not privileged. The detailed facts concerning exactly what was said and done during the investigation could have been- and should have been provided to the designee[18]. Indeed, in Security Ins. Co. of Hartford v. Trademark Ins. Co., 218 F.R.D. 29, 33-34 (D. Conn. 2003), the Court explained that the defendant was,

---

[18]Furthermore, as was explained above, any claims of privilege were waived by the Defendant when it raised the affirmative defenses in this case.

30

> required to produce a witness capable of providing facts in support of the allegations within the Answer. In light of the affirmative duty Rule 30(b)(6), [the defendant's] corporate representative was obliged to gain some understanding of the underlying facts, regardless of the source identifying underlying facts, and to answer questions accordingly. It matters not that the witnesses understanding was gleaned from documents protected as work product, as the facts within those documents are not subject to protection.

Id.

Any claim that the information was not "available" to the corporation is similarly specious. While the term "reasonably available" is not defined by F.R.C.P. 30(b)(6), information known to retained counsel is clearly available to a party. See: In Re Vitamins Antitrust Litigation, 216 F.R.D. 168, 172-172 (D.D.C. 2003)(noting that defendant was "obligated to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts known to Bioproducts or its counsel, regardless of whether such facts are memorialized in work product protected documents or reside in the minds of counsel"); Paul Revere Life Ins. Co. v. Jafari, 206 F.R.D. 126, 127 (D. MD 2002) (requiring production of 30(b)(6) witness to testify regarding facts obtained by counsel during discovery). See Also: Calzaturficio, 201 F.R.D. 33, 38-39 (D.Mass. 2001)(finding that documents within the party's control are "reasonably available" ).

The Defendant's conduct in failing to provide an educated witness was neither justified under the law, nor harmless. As one Court has recently explained,

> " Rule 30(b)(6) explicitly requires [a corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process. The Court understands that preparing for a

31

>Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.

Twentieth Century Fox, 2002 WL 1835439 at *2-*3. (citations omitted). See Also: AIA Holdings, S.A. v. Lehman Brothers, Inc., 2002 WL 1041356 at *3, (S.D.N.Y.2002).

In the present case, the Defendant failed to produce a F.R.C.P. 30(b)(6) witness prepared to provide all information reasonably available to the corporation with respect to the subjects identified in the deposition notice, and thereby denied the Plaintiffs a meaningful opportunity to cross-examine the Defendant as to issues critical to this case. Consequently, the Plaintiffs respectfully request that the Court order Defendant to produce a properly educated 30(b)(6) witness, and order that all expenses for this deposition, including all court reporter fees and all Plaintiffs' counsel fees (for the period of the deposition only) be paid by Defendant. In addition, the Plaintiffs' seek their reasonable attorneys fees and costs for the preparation of this motion.

### D.  Defendant's Counsel Violated F.R.C.P. 30(d)(1)

Defendant's Counsel has also repeatedly violated F.R.C.P. 30(d)(1) by frustrating the Plaintiffs' attempts to take depositions. Defendant's Counsel made frequent speaking objections, refused to stop making such objections, and instructed the witness to remain in the room while she made such objections. Defendant's Counsel also answered questions directed at the witness, asked the witness questions in the middle of plaintiff's examination, interrupted after a question was answered to suggest that the witness misunderstood the question, thereby implying that the witness should change his answer, interrupted to ask clarifying questions- when the witness had not expressed confusion, interrupted to coach the witness and interrupted to make denigrating comments. In fact, in the 187 pages of deposition testimony for the 30(b)(6)

32

deposition, there are only 24 pages which do not include an objection, comment or interruption by Defendant's Counsel. (See Ex J.)

In describing the type of conduct that is prohibited by F.R.C.P. 30(d)(1), the Court in Calzaturficio, 201 F.R.D. at 39-40, explained,

> Counsel is not entitled to assist his witnesses during a deposition. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers."

Id. quoting Johnson v. Wayne Manor Apartments, 152 F.R.D. 56, 59 (E.D.Pa., 1993). Coaching the witness and making speaking objections are simply not permitted in depositions in federal cases. McDonough v. Keniston, 188 F.R.D. 22, 24 (D.NH, 1998). The Advisory Committee Notes to Rule 30 (d)(3) further explain that, "counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer". See Also: Dravo Corp v. Liberty Mut. Ins. Co., 164 F.R.D. 70 (D.Neb 1995); Phillips v. Manufacturers Hanover Trust Co., 1994 WL 116078 at *4 (S.D.N.Y.1994); Van Pilsum v. Iowa State University, 152 F.R.D. 179 (S.D.Iowa 1993).

In the present case, Defendant's Counsel clearly violated these standards. There is no doubt that her behavior is sanctionable. However, given the fact that Defendant's Counsel practices outside of the District of Connecticut, and may not be familiar with this Court's expectations, the Plaintiffs do not presently seek sanctions for this misconduct. Instead, the Plaintiffs merely request that the Court issue an order requiring that Defendant's Counsel comply with F.R.C.P. 30(d)(1) in all future

33

depositions.

## IV. Conclusion

For the reasons set out in this memorandum, the Plaintiffs respectfully request that the Court: (1) issue an order compelling the Defendant to produce any and all documents concerning or relating to Defendant's investigations or response to any sex discrimination or sexual harassment complaints since 1997; (2) order the Defendant to pay the costs for the re-deposition of alleged harasser Bhavin Patel so that all questions Patel was instructed not to answer on the basis of privilege may be answered; (3) order the Defendant to produce a fully educated and informed F.R.C.P. 30(b)(6) witness who is capable of providing all information available to the Defendant with respect to its investigations and with respect to all other issues set out in the F.R.C.P. 30(b)(6) notice; and order the Defendant to pay the costs of this re-deposition (4) order Defendant to pay reasonable attorneys fees and costs for the preparation of this motion; and (5) order that Defendant's Counsel comply with F.R.C.P. 30(d)(1) with respect to future depositions in this case.

RESPECTFULLY,

The Plaintiff,

BY: _____
Mary E. Kelly # 07419
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105

34

# AFFIDAVIT OF MARY E. KELLY

1. I am the one of the attorneys representing Plaintiffs Eva McIntire, Maria Elena Pena Mota and Maria Teresa Alexander (hereinafter "the Plaintiffs") in the instant case against Defendant Pennant Foods, Inc. (hereinafter "the Defendant").

2. I am over 18 years of age and understand the obligations of an oath.

3. Except where noted otherwise, the statements in this affidavit are based upon my personal knowledge.

4. I have tried to resolve the issues raised in the instant Motion to Compel and Request for Sanctions. I have had numerous telephone conversations, and written a number of letters to opposing counsel. I have provided opposing counsel with legal authority supporting my position on the issues. The parties have even involved this Court in an attempt to resolve the issues. Despite these efforts, the parties have been unable to resolve these issues.

5. When the Plaintiffs brought the instant action, the Defendant raised the affirmative defenses that, "Defendant exercised reasonable care to prevent and to correct promptly any sexually harassing behavior", and that, "Defendant [sic] fails to state a claim of harassment because Defendant took prompt and effective action to remedy an employee's inappropriate behavior once it was on notice of such behavior". (See Defendant's Answer, Eighth Affirmative Defense; Ninth Affirmative Defense)

6. In May 2003, the Plaintiffs served interrogatories and requests for production of documents on the Defendant, seeking *inter alia* information as to the factual basis for the Defendant's affirmative defenses.

7. With respect to Interrogatory Number 4, the Plaintiffs sought to have the Defendant, "identify and describe in detail the policy, practice or procedure used by the Defendant to investigate complaints of retaliation, sexual harassment and/or sex discrimination, including the individuals involved in the investigative process, the training if any, received by each such individual, and please identify all documents that relate to the answer". The Defendant filed multiple objections to this interrogatory.

8. After a discovery conference, the Court ordered the Defendant to identify the persons responsible for investigating complaints for the Defendant from 1997 to the present and to describe any investigatory practices.

9. The Defendant filed a supplemental response pursuant to the Court's order on or about November 20, 2003. In this response, the Defendant stated that

investigations were conducted by supervisors, managers or department heads and/or by Joan King, David Schenkman, Diana Figueroa, and Richard Price. The Defendant did **not** state that legal counsel had conducted investigations into sexual harassment complaints and did not identify any documents concerning the investigations conducted by legal counsel on the Defendant's behalf

10. With respect to Interrogatory 13, the Plaintiffs asked the Defendant to, "identify each and every employee who has complained of sexual harassment, retaliation, sexual misbehavior or sex discrimination from 1995 to the present, and describe each such complaint and the Defendant's response if any. Please identify all documents which relate to each such complaint or to this answer". The Defendant again filed multiple objections to this Interrogatory.

11. During a discovery conference with the Court, Defendant's Counsel indicated that it had produced all non-privileged documents concerning the complaints or investigations. After the conference, the Defendant was ordered to state that there had been no other complaints, formal or otherwise, and to identify any documents concerning the complaints. The Defendant provided a supplemental response on or about November 20, 2003. The Defendant confirmed that only the Plaintiffs and Ms. Srivistara, had made such complaints, and stated that the Defendant had no documents concerning Ms. Srivistara's complaints.

12. The Defendant did not produce any documents concerning the investigations by legal counsel into the complaints of the Plaintiffs or provide a privilege log with respect to the documents which had been withheld based on claims of privilege.

13. With respect to the production request 3, the Plaintiffs asked the Defendant to produce, "all documents regarding any and all complaints or investigations of sexual harassment, retaliation, and/or sex discrimination by Defendant from 1995 through to the present, including any documents relating to the investigation or settlement of such complaints and any summaries or evaluations of such complaints." The Defendant filed multiple objections, including claiming that the documents were protected by the attorney client or work product privileges.

14. Since June 2003, I have asked for a privilege log identifying any documents withheld on the basis of privilege, and including indicating: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; and (5) each recipient of the document. Defendant's counsel initially agreed to produce such a log. However, in or about February 2004, Defendant's Counsel indicated that the Defendant would not produce a privilege log identifying the documents concerning the investigations conducted by current legal counsel until and unless ordered to do so by the Court. To date, no privilege log has been received.

15. During the depositions in this case it became apparent that current and former legal counsel **had** been involved and/or had conducted the investigations into the complaints of the Plaintiffs and Seema Srivistara.

16. It appears that there are as many as five investigations at issue. First, prior legal counsel Gary Starr allegedly investigated the complaints of Ms. Srivistara. Second, Ms. King allegedly conducted an investigation into Plaintiff Pena Mota's internal complaints. Current legal counsel was apparently involved in this investigation, but according to Attorney Kappelman did not conduct the investigation. Attorney Kappelman indicates that current legal counsel did a second investigation after Plaintiff Pena Mota filed charges with the CHRO and EEOC. Fourth, current legal counsel conducted an investigation after Plaintiff McIntire filed charges with the CHRO and EEOC. Finally, current legal counsel conducted an investigation after Plaintiff Alexander filed charges with the CHRO and EEOC.

17. The Defendant corporation, testifying via a FRCP 30(b)(6) deposition suggested that it was relying on all of these investigations with respect to its affirmative defenses. (Ex. J at 84-89)

18. During the depositions, the Defendant claimed that it was not waiving the attorney client or work product privileges with respect to Attorney Starr's investigations of Seema Srivistara's complaints. (Ex. J at 90-93)

18. During the depositions, the Defendant claimed that it was not waiving the attorney client or work product privileges with respect to legal counsel's communications with the Defendant during Joan King's investigation of Plaintiff Pena Mota's complaints. (Ex. G at 198-200)

19. During the depositions, the Defendant claimed that it was not waiving the attorney client or work product privileges with respect to current legal counsel's post filing investigations of the three Plaintiffs claims. (Ex. H at 95-105)

20. During the depositions, the Defendant took the position that it was entitled to rely on the investigations in raising the affirmative defenses, and at the same time refuse to waive the attorney client and work product privileges with respect to these same investigations. (Ex. H at 95-105, Ex. J at 90-93).

21. During the deposition of Bhavin Patel, I provided Attorney Kappelman with legal authority for the proposition that raising the affirmative defenses waived the privileges, including the case of Brownell v. Roadway Package System, Inc., 185 FRD 19 (NDNY 1999). Defendant's counsel, however, continued to claim that she could rely on the investigations without waiving the privileges. No legal authority for this has ever been provided to me. I have asked if the Defendant is aware of any such authority. (Ex. J at 92)

3

22. Because facts are not privileged, I decided to depose the corporation to learn the details of the five investigations on which the Defendant was apparently relying in raising the affirmative defenses.

23. When I noticed the corporation's deposition, pursuant to FRCP 30(b)(6), Attorney Kappelman stated that Brian Glancy would be the designee for all matters included in the notice. I scheduled the deposition around his availability- as well as the availability of counsel.

24. On the date of the FRCP 30(b)(6) deposition, Attorney Kappelman indicated that Mr. Glancy might not be able to provide all of the information known or reasonably available to the Defendant. (Ex. J at 5-24)

25. Mr. Glancy was not able to provide all of the information known or reasonably available to the Defendant. In particular, he did not have the information available to the Defendant, through counsel, with respect to the affirmative defenses.

26. During a conference with the Court on February 27, 2004, and in subsequent faxed communications and telephone conversations, Attorney Kappelman clarified the Defendant's current position for me.

27. The Defendant's current position is that with respect to the affirmative defenses, the Defendant intends to rely on the investigation conducted and any prompt remedial measures taken with respect to Seema Srivistara. The Defendant will waive any claims of privilege with respect to this investigation and response.

28. The Defendant's current position is that with respect to the affirmative defenses, the Defendant intends to rely on the pre- CHRO/EEOC filing investigation conducted by Joan King with respect to Plaintiff Pena Mota and any prompt remedial measures taken. The Defendant will waive any claims of privilege with respect to this pre-filing investigation.

29. The Defendant's current position is that with respect to the affirmative defenses, the Defendant does not intend to rely on current legal counsel's post-CHRO and EEOC filing investigations into Plaintiff Pena Mota, McIntire or Alexander's complaints. Attorney Kappelman contends that these investigations are privileged because they were conducted with a dual purpose of investigating complaints and preparing position statements for the Defendant. However, the Defendant does intend to rely on the recommendations made and the actions taken as a result of counsel's post-CHRO and EEOC filing investigations into Plaintiff Pena Mota, McIntire or and Alexander's complaints.

30. Despite the fact that the Defendant is relying on the recommendations made and the actions taken as a result of counsel's post-filing investigations, the

4

Defendant claims that the details of the investigations and documents concerning the investigations remain privileged.

I have read the foregoing affidavit and swear that it is true and correct to the best of my knowledge and belief.

_____
Mary E. Kelly

Sworn and subscribed to before me on this _11th_ day of March 2004.

_____
Notary Public/Commissioner of the Superior Court

5